# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| WYNDHAM VACATION ) | |
| OWNERSHIP, INC., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 3:18-cv-01399 |
| v. ) | Chief Judge Crenshaw |
| ) | Magistrate Judge Frensley |
| ) | |
| VACATION TRANSFERS ) | |
| UNLIMITED, LLC, et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

Pending before the Court is the motion for a more definite statement (Docket Entry No. 21) by Defendants Vacation Transfers Unlimited, LLC and Dean Spigner and the motion for a more definite statement (Docket Entry No. 26) by Defendants Mortgage Wellness Group, LLC d/b/a Legal Timeshare Aid and Charles Simerka. For the reasons stated below, these motions are **DENIED**.

## I. BACKGROUND

Plaintiffs, Wyndham Vacation Ownership, Inc.; Wyndham Vacation Resorts, Inc.; Wyndham Resort Development Corporation; Shell Vacations, LLC; SVC-West, LLC; SVC-Americana, LLC; and SVC-Hawaii, LLC, filed this action against Defendants, Vacation Transfers Unlimited, LLC ("VTU"); Dean Spigner; Mortgage Wellness Solutions, LLC d/b/a Legal Timeshare Aid ("LTA"); Charles Simerka; and John Does 1-3, asserting claims against each Defendant for violation of the Lanham Act, 15 U.S.C. § 1125(a)(1); intentional interference with existing contractual relations; intentional interference with current and prospective business relations; civil conspiracy; violation

of the Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-101 to 126; and unlawful inducement of breach of contract, Tenn. Code Ann. § 47-50-109. (Docket Entry No. 1, at 5-7, 43, 46, 49, 52, 54, 57).[1]

According to the complaint, Plaintiff Wyndham Vacation Ownership, Inc. ("Wyndham") is the parent company of the other Plaintiff entities that conduct timeshare sales and development activities throughout the United States, namely Wyndham Vacation Resorts, Inc., Wyndham Resort Development Corporation, and Shell Vacations LLC, SVC-West, SVC-Americana, and SVC-Hawaii. *Id*. at ¶ 42. As part of its business, these entities enter into purchase contracts with consumers ("the Wyndham owners") where the Wyndham owners agree to pay an amount certain for the timeshare interest, maintenance and/or annual fees to Wyndham for the upkeep of the timeshare units and common areas of the timeshare properties, and a pro-rated share of the property taxes to Wyndham. *Id*. at ¶ 43. Defendant Spigner owns and controls Defendant VTU and is the managing member and registered agent for VTU, which promises Wyndham owners help in getting out of their timeshares. *Id*. at ¶¶ 25, 65-66. Defendant Simerka owns and controls Defendant LTA, which also sells "timeshare exit services," and is listed as the Chief Executive Member, along with Defendants John Does 1-3, who are also "Executive Members" of LTA but who are not identified by name in the Secretary of State filings for LTA. *Id*. at ¶¶ 24, 28, 65, 68-69.

In essence, Plaintiffs allege that Defendants, who are not parties to the purchase contracts between Plaintiffs and the Wyndham owners, solicit Wyndham owners and falsely advertise a cancellation or exit service whereby Defendants guarantee Wyndham owners that they will be legally and permanently exited from their purchase contracts if they use Defendants' services and pay

---

[1]Unless otherwise stated, citations are to the Court's ecf pagination.

Defendants a fee, without disclosing that cancellation of a purchase contract cannot take place without Wyndham's consent, the negative harm to the Wyndham owners as a result of their breach, or Wyndham's free assistance programs that help customers who can no longer afford their timeshare or otherwise wish to leave. *Id*. at ¶¶ 3-6, 56, 66, 69, 94-95. Plaintiffs allege that, after being retained, Defendants improperly instruct or induce Wyndham owners to breach their contracts by stopping payments to Wyndham as a means in facilitating their cancellation of their contracts with Wyndham, despite the fact that such cancellation is unlawful. *Id*. at ¶¶ 8, 13, 77, 88, 104. Defendants allegedly will assign Wyndham owners to pre-selected "referral attorneys," who do little more than send a form demand letter to Plaintiffs around the time that the Wyndham owners are instructed by Defendants or their agents to breach their purchase contracts with Wyndham. *Id*. at ¶¶ 8, 13, 78, 82, 85. Plaintiffs allege that as a result of Defendants' unlawful actions Wyndham will be forced to expend monies foreclosing on the timeshares to recoup the monies owed in delinquent mortgage, maintenance, and tax payments; Wyndham has suffered the loss of goodwill to its customer base who may be required to pay an increase in maintenance and/or annual fees because of non-payment by others; Wyndham has lost revenue associated with the loss of repeat business, referrals, and upgrades by existing Wyndham owners; and Wyndham has wasted resources in responding to Defendants' improper actions. *Id*. at ¶¶ 58, 113-15.

The District Judge referred this action to the Magistrate Judge for customized case management in accordance with Local Rule 16.01 and 28 U.S.C. § 636(b)(1)(A). (Docket Entry No. 13). Before the Magistrate Judge are the motion for a more definite statement (Docket Entry No. 21) by Defendants VTU and Spigner and the motion for a more definite statement (Docket Entry No. 26) by Defendants LTA and Simerka. Both motions essentially assert the same contentions: that

Defendants cannot prepare a response to Plaintiffs' complaint because (1) the complaint fails to specify which allegations and claims are being made against which Defendants and by which Plaintiff; (2) Plaintiffs failed to attach to the complaint copies of the contracts with which Defendants allegedly interfered; and (3) Plaintiffs failed to identify the Wyndham owners whom each Defendant solicited, entered into an agreement for services with, or otherwise inappropriately induced into breaching their contractual obligations to Plaintiffs. (Docket Entry No. 22, at 1-2, 3-4; Docket Entry No. 27, at 2, 4, 6-7). In response, Plaintiffs contend (1) that the complaint expressly states that the six numbered counts are brought by all Plaintiffs against all Defendants, that Defendants are acting in concert in furtherance of a common enterprise, and that the complaint sets forth detailed allegations delineating each Defendant's role in the scheme; and (2) that the minimal pleading burden does not require Plaintiffs to attach nearly 1000 contracts and identify every Wyndham owner associated with those contracts, especially where Defendants already have this information. (Docket Entry No. 28, at 2-3; Docket Entry No. 32, at 3).

## II. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). "[T]he 'simplified

4

notice pleading standard [of Fed. R. Civ. P. 8(a)(2) ] relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.'" *Carrethers v. Speer*, 698 F. App'x 266, 271 (6th Cir. 2017) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)). Under Federal Rule of Civil Procedure 8(e), "[p]leadings must be construed so as to do justice." Federal Rule of Civil Procedure 10(b) separately requires that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."[2]

"If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding." *Swierkiewicz*, 534 U.S. at 514. Rule 12(e) of the Federal Rules of Civil Procedure provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed" if the pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." "Motions for a more definite statement are designed to address unintelligibility rather than a lack of detail." *Thorpe v. Wal-Mart Stores, Inc.*, No. 5:16CV1247, 2016 WL 4098426, at *1 (N.D. Ohio Aug. 2, 2016). "Federal courts generally disfavor motions for more definite statements." *E.E.O.C. v. FPM Grp., Ltd.*, 657 F. Supp. 2d 957, 966 (E.D. Tenn. 2009). "The notice pleading standard is generally forgiving and courts do not favor motions for a more definite statement, largely because parties may use the discovery period to flesh out the details of claims and defenses." *Anonymous v. City of Hubbard*, No. 4:09CV1306, 2010 WL 148081, at *1 (N.D. Ohio Jan. 11, 2010); *DeVore Brokerage Co. v. Goodyear Tire & Rubber Co.*, 308 F. Supp. 279, 281 (M.D. Tenn.

---

[2]In addition to Rule 8 and Rule 12(e), Defendants cite Federal Rule of Civil Procedure 10(b) as a basis for their motion for a more definite statement. (Docket Entry No. 21, at 1; Docket Entry No. 26, at 1).

5

1969) ("If the pleading is sufficiently definite so that an opponent can reply to it, the motion for a more definite statement should be denied, and any particular which the opponent needs may be obtained through discovery procedures."). Thus, "[i]n view of the notice pleading standards of Fed. R. Civ. P. 8(a)(2) and the opportunity for extensive pretrial discovery, courts rarely grant such motions unless the complaint is 'so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it.'" *Robinette v. Outreach Labs*, No. 2:16-CV-406, 2016 WL 5421001, at *2 (S.D. Ohio Sept. 29, 2016) (citation omitted). Therefore, "if the complaint meets the notice pleading requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure, the motion should be denied." *FPM Grp.*, 657 F. Supp. 2d at 966.

### III. ANALYSIS

Spigner and VTU and Simerka and LTA contend that they are unable to respond to the complaint because the complaint fails to specify which allegations and claims are being made against each Defendant and by which Plaintiff. (Docket Entry No. 22, at 1-2, 3-4; Docket Entry No. 27, at 2, 4, 5-7). Defendants VTU and Spigner argue that they "cannot reasonably prepare a response to the Complaint because it is impossible to discern which allegations, if any, are being made against them." (Docket Entry No. 22, at 1). Similarly, Defendants LTA and Simerka argue that they "have been unable to reasonably identify the nature of any allegations specific to each of them," and that they "are at a loss to find any specific allegations against them individually." (Docket Entry No. 27, at 3-4, 5). However, for the reasons stated below, the Magistrate Judge concludes that these contentions are without merit.

Plaintiffs' complaint consists of 59 pages and 214 numbered paragraphs and asserts six claims. Paragraphs 1-16, under the heading "Basis of Complaint," set forth general allegations and

provides a brief synopsis of Plaintiffs' claims. In paragraphs 17-23 and 42-43, Plaintiffs describe who they are and the nature of their contractual relationships with the Wyndham owners. The complaint specifically alleges that Plaintiff Wyndham Vacation Ownership, Inc. ("WVO") is the parent company of the other Plaintiff entities that conduct timeshare sales and development activities throughout the United States, namely Wyndham Vacation Resorts, Inc. ("WVR"), Wyndham Resort Development Corporation ("WRDC"), and Shell Vacations LLC ("SV"), SVC-West, SVC-Americana, and SVC-Hawaii. (Docket Entry No. 1, at ¶ 42). The complaint alleges that these entities enter into purchase contracts with the Wyndham owners who agree to pay an amount certain for the timeshare interest, maintenance and/or annual fees to Wyndham for the upkeep of the timeshare units and common areas of the timeshare properties, and a pro-rated share of the property taxes to Wyndham. *Id*. at ¶ 43. The opening paragraph of the complaint refers to all of Plaintiffs collectively as "Wyndham." *Id*. at 1. Thus, the complaint adequately specifies who Plaintiffs are and their relationship to each other and the Wyndham owners.

Paragraphs 24-28 and 65-69 describe who Defendants are and that they act as third party exit ("TPE") businesses. The opening paragraph of the complaint refers to all of Defendants collectively as "Defendants." *Id*. at 2. "Section J" of the Complaint, titled "Particular Counts," specifically states that all six counts are "against all Defendants." *Id*. at 43. Plaintiffs specifically define the term "Defendants" to mean *all* Defendants, which gives Spigner and VTU and Simerka and LTA sufficient notice that when the term "Defendants" is used, that term applies to all of them. *In re Methyl Tertiary Butyl Ether ("'MTBE'") Prod. Liab. Litig.*, 233 F.R.D. 133, 135 n.13 (S.D.N.Y. 2005) (citing *Tagare v. NYNEX Network Sys. Co.*, 921 F. Supp. 1146, 1153 (S.D.N.Y. 1996) ("denying motion for more definite statement because no ambiguity in the complaint; when plaintiff

7

'employ[ed] the term "'defendants'" he [was] referring to all of the defendants named in the Complaint'")); *Mertik Maxitrol GMBH & Co. KG v. Honeywell Techs. SARL*, No. 10-12257, 2012 WL 748304, at *4 (E.D. Mich. Mar. 6, 2012) (finding "no reason to prohibit the use of collective designations in the context of th[e] action" where plaintiffs accused the three entities of nearly identical misconduct).

The complaint also alleges sufficient detail showing Defendants' connection with each other. The complaint seeks to pierce the corporate veil as to LTA and VTU and asserts that "Simerka and Spigner are individually liable and all of their businesses and associated businesses are jointly and severally liable," that "Defendants are alter egos of each other, utilizing the same office or business locations, and failing to maintain arm's-length relationships among related entities," and that "these Defendants are utilizing these businesses as an instrumentality or business conduit in order to further a single wrongful scheme." *Id*. at ¶ 29. The complaint alleges that Defendants are "acting in concert" in conducting a "TPE scam" and causing Wyndham damages "by interfering with the current and prospective contractual relationships between Wyndham Owners and Wyndham." *Id*. at ¶ 55. Additionally, the complaint alleges that Spigner and Simerka launched a scheme where "they purchase the contact information of Wyndham Owners from unknown sources, solicit those owners, and attempt to sell these owners 'timeshare exit' services," and that "[i]n conjunction" with this scheme they use the corporate shells, LTA and VTU, "to target Wyndham and make it more difficult for Wyndham to identify the perpetrators behind the scheme." *Id*. at ¶ 65. The complaint further alleges that "VTU operates in conjunction with at least one other TPE entity owned and controlled by Charles Simerka, Mortgage Wellness Solutions, LLC d/b/a Legal Timeshare Aid . . . ." *Id*. at ¶ 68. Moreover, the complaint alleges that "LTA and VTU share the same physical

8

address in Crossville, Tennessee, and one of the websites for LTA (mortgagews.com) has listed VTU as the 'Admin Organization' behind the website with Simerka as the contact person," that "the attorneys associated with LTA and VTU all use the same template demand letter directed at Wyndham," and that "Defendants are all plainly working together as part of a single scheme to target Wyndham Owners and Wyndham." *Id*. at ¶ 74. Further still, the complaint alleges that "Simerka and Spigner direct and/or personally authorize LTA and VTU employees to instruct Wyndham Owners to stop making payments under their Purchase Contracts," and that "Simerka and Spigner have further blurred the corporate lines between their respective entities and between their roles as managing members," as "VTU and LTA are used interchangeably to perpetrate the same scheme, operating out of the same offices, with the website of one registered to the other (i.e., LTA to VTU with Simerka as the contact person), despite purportedly separate ownership." *Id*. at ¶¶ 104, 106.

The complaint also sets forth specific factual allegations against each Defendant as the bases for the claims asserted against them. (See Docket Entry No. 1, at ¶¶ 25, 27, 29, 59-62, 64-66, 80, 101-109 (asserting specific allegations against Spigner); ¶¶ 25, 29, 65-68, 71-72, 74, 78-81, 89, 100-102, 104-106, 108-09 (asserting specific allegations against VTU); ¶¶ 24, 26, 29, 59-63, 65, 68, 74-76, 79-80, 101-09 (asserting specific allegations against Simerka); ¶¶ 24, 28-29, 65, 68-72, 74, 75 n.1, 76, 78-81, 89-90, 93, 100-106, 108-09 (asserting specific allegations against LTA); ¶¶ 24, 28, 101, 107-09 (asserting specific allegations against John Does 1-3)). As examples, the complaint sets forth that Simerka and Spigner are leaders of a TPE ring operating in Nashville and in Crossville, Tennessee (*id.* at ¶ 59); that since leaving Wyndham's employment, Simerka and Spigner have used their knowledge of Wyndham's business to interfere with Wyndham's relationships with its customers (*id.* at ¶ 61); that Spigner and Simerka launched a scheme, where they purchase contact

9

information of Wyndham Owners and attempt to sell these owners "timeshare exit" services and that they formed the corporate shells, VTU and LTA, which operate as traditional TPEs, to target Wyndham and make it more difficult for Wyndham to identify the perpetrators behind the scheme (*id*. at ¶¶ 24-25, 65-66, 69); the websites owned and operated by Spigner and VTU and Simerka and LTA and the false and misleading statements contained on their websites and social media accounts (*id*. at ¶¶ 66-67, 69-70, 89, 102); the "process" used by Spigner and VTU and Simerka and LTA of soliciting Wyndham owners, advertising attorney referral services and assigning Wyndham owners pre-selected referral attorneys (*id*. at ¶¶ 67, 70, 76, 78-80, 85-86, 89, 103); and the specific number of contractual breaches by Wyndham owners who were referred by Spigner and VTU and Simerka and LTA and represented by the pre-selected referral attorneys who sent Wyndham demand letters on behalf of the Wyndham owners (*id*. at ¶¶ 80, 85-86).

Accordingly, based upon the foregoing, the Magistrate Judge concludes that the complaint adequately specifies which allegations are being made against each Defendant, that all six claims are being asserted by all Plaintiffs, collectively known as "Wyndham," against each named Defendant, collectively known as "Defendants," and that the complaint contains sufficient detail for Spigner and VTU and Simerka and LTA to admit or deny Plaintiffs' allegations and claims.[3]

---

[3]In support of their motions, Defendants cite to *Davis v. City of Memphis Fire Dep't*, No. 11-3076-STA-CGC, 2012 WL 2000713 (W.D. Tenn. May 31, 2012) and *Aaron v. Novartis Pharm. Corp.*, No. 1:12CV-00203-JHM, 2013 WL 3790902 (W.D. Ky. July 19, 2013), but these cases are inapplicable to this action. In *Davis*, the plaintiff's complaint, alleging claims ranging from Title VII to assault, was verbose and grammatically incorrect, did not identify which claims applied to which of the multiple defendants, and had some counts containing more than one ground or claim for relief. *Id* at *3. In *Aaron*, the court found that the amended complaint did not identify or separate out the causes of action in any discernible way and found that a statement of each claim in a separate count would promote clarity. 2013 WL 3790902, at *3. Defendants Simerka's and LTA's reliance on *Sevier v. Apple, Inc.*, No. 3:13-0607, 2015 WL 4873122 (M.D. Tenn. Aug. 13, 2015), *aff'd* (Sept. 6, 2016) is also misplaced. There, the plaintiff's complaint was 90 pages in length and included 100

Defendants also contend that they are unable to adequately respond to Plaintiffs' complaint because Plaintiffs did not attach to their complaint the copies of the contracts with which Defendants allegedly interfered and because Plaintiffs failed to identify the Wyndham owners whom each Defendant solicited, entered into an agreement for services with, or otherwise induced to breach their contractual obligations to Plaintiffs. (Docket Entry No. 22, at 1-2, 3-4; Docket Entry No. 27, at 2, 4, 6-7). Defendants further assert that "Plaintiffs do not identify any specific timeshare property, nor do they identify who owns any such timeshare property." (Docket Entry No. 22, at 3; Docket Entry No. 27, at 6).

Rule 10(c) of the Federal Rules of Civil Procedure provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." However, "'a plaintiff is under no obligation to attach to his complaint documents upon which his action is based.'" *Melton v. Blankenship*, No. 08-5346, 2009 WL 87472, at *5 (6th Cir. Jan. 13, 2009) (citation omitted); *Favergray Co. v. Selective Ins. Co. of Am.*, No. 3:14-CV-1383-J-39JRK, 2015 WL 12843198, at *3 (M.D. Fla. July 20, 2015)*, report and recommendation adopted sub nom. The Favergray Co. v. Selective Ins. Co. of Am.*, No. 3:14-CV-1383-J-39JRK, 2015 WL 12843231 (M.D. Fla. Sept. 1, 2015) (denying motion for more definite statement, where the court found that "Plaintiff was not required to attach the insurance policy or policies."). Here, Plaintiffs allege Defendants contacted hundreds of Wyndham owners whom Defendants have assisted in attempting to exit from

---

footnotes. *Id*. at *2. The court noted that the complaint's "truly incredible nature" was virtually impossible for the court to convey and that the majority of the allegations were "simply bizarre." *Id*. at *7. The court found that "the precise basis" of the plaintiff's claims was "largely indecipherable due to the incredibly verbose and sermonizing nature of his pleading" and that the complaint was "essentially a thesis or dissertation discussing Plaintiff's personal beliefs regarding a multitude of irrelevant and improper topics." *Id*. at *7, 9.

their contracts with Wyndham. (Docket Entry No. 1, at ¶¶ 6, 13, 85-86). Requiring Plaintiffs to attach hundreds of contracts to the complaint at the pleading stage would be unnecessary and burdensome. *See Aetna, Inc. v. Health Diagnostic Lab. Inc.*, No. CV 15-1868, 2015 WL 9460072, at *6 (E.D. Pa. Dec. 28, 2015) (regarding plaintiff's tortious interference claim, where defendants wanted plaintiff to list all of the contracts that it had with a provider or member, the court concluded, "At this early stage of the case, that type of burden placed on Plaintiff would be extreme and unnecessary. Bluewave Defendants will certainly be able to obtain such information but not until the discovery phase.").

The complaint sets forth Defendants' business model of soliciting Wyndham owners and assisting them with exiting or canceling their timeshare contracts with Wyndham and referring them to certain referral attorneys. (Docket Entry No. 1, at ¶¶ 78-80, 83-89). Defendants should know the identity of the Wyndham owners to whom they provided "timeshare exit" services and referred to pre-selected referral attorneys. Defendants do not explain why the identity of any specific timeshare property or the owner of such timeshare property is relevant to their responses to Plaintiffs' claims and allegations. Any lack of detail found in the complaint can be fleshed out during discovery. *See Anonymous*, 2010 WL 148081, at *2 ("[A] motion for a more definite statement is not intended to serve as a substitute for the discovery process."); *Dodge v. CDW Gov't, Inc.*, No. 1:09CV528 (AJT/IDD), 2009 WL 1605010, at *4 (E.D. Va. June 5, 2009) ("[The documents] need not necessarily be attached or quoted in the complaint if they can be obtained during the discovery process and are unnecessary to 'frame a response to the Plaintiff's complaint.'") (citation omitted). Moreover, "'when addressing a Rule 12(e) motion, the court may consider whether the movant has knowledge of the information sought, and will deny the motion [i]f the movant's existing knowledge

enables it to file a responsive pleading.'" *Exal Corp. v. Roeslein & Assocs., Inc.*, No. 4:12-CV-01830, 2012 WL 4754748, at *4 (N.D. Ohio Oct. 2, 2012) (internal quotation marks omitted); *Chattanooga-Hamilton Cty. Hosp. Auth. v. Xerox Corp.*, No. 1:16-CV-496, 2017 WL 2637745, at *14 (E.D. Tenn. June 19, 2017) ("'[T]he [(Rule 12(e)] motion is even less well received when the movant simply seeks particularization of facts already known to it.'") (quoting *D&M Mill Work, Inc. v. Elite Trimworks, Corp.*, 2008 WL 5272471, at *2 (M.D. Tenn. Dec. 18, 2008)). Accordingly, Plaintiffs' complaint is sufficiently detailed to allow Defendants to respond.

## IV. CONCLUSION

Accordingly, for these reasons, the motion for a more definite statement (Docket Entry No. 21) by Defendants VTU and Spigner, and the motion for a more definite statement (Docket Entry No. 26) by Defendants LTA and Simerka are **DENIED**.

It is so **ORDERED**.

_____
JEFFERY S. FRENSLEY
United States Magistrate Judge