**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **WYNDHAM VACATION** | ) | |
| **OWNERSHIP, INC., et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No. 3:18-cv-01399** |
| **v.** | ) | **Chief Judge Crenshaw** |
| | ) | **Magistrate Judge Frensley** |
| | ) | |
| **VACATION TRANSFERS** | ) | |
| **UNLIMITED, LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

Pending before the Court is Plaintiffs' motion to disqualify Aubrey Givens and Kristin Fecteau Mosher (Docket Entry No. 24). For the reasons stated below, this motion is **GRANTED.**

### I. BACKGROUND

Plaintiffs, Wyndham Vacation Ownership, Inc.; Wyndham Vacation Resorts, Inc.; Wyndham Resort Development Corporation; Shell Vacations, LLC; SVC-West, LLC; SVC-Americana, LLC; and SVC-Hawaii, LLC, filed this action against Defendants, Vacation Transfers Unlimited, LLC ("VTU"); Dean Spigner; Mortgage Wellness Solutions, LLC d/b/a Legal Timeshare Aid ("LTA"); Charles Simerka; and John Does 1-3, asserting claims against each Defendant for violation of the Lanham Act, 15 U.S.C. § 1125(a)(1); intentional interference with existing contractual relations; intentional interference with current and prospective business relations; civil conspiracy; violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-101 to 126; and unlawful inducement of breach of contract, Tenn. Code Ann. § 47-50-109. (Docket Entry No. 1, at 5-7, 43, 46, 49, 52, 54, 57).

According to the complaint, Plaintiff Wyndham Vacation Ownership, Inc. ("Wyndham") is the parent company of the other Plaintiff entities that conduct timeshare sales and development activities throughout the United States, namely Wyndham Vacation Resorts, Inc., Wyndham Resort Development Corporation, and Shell Vacations LLC, SVC-West, SVC-Americana, and SVC-Hawaii. *Id*. at ¶ 42. As part of its business, these entities enter into purchase contracts with consumers ("the Wyndham owners") where the Wyndham owners agree to pay an amount certain for the timeshare interest, maintenance and/or annual fees to Wyndham for the upkeep of the timeshare units and common areas of the timeshare properties, and a pro-rated share of the property taxes to Wyndham. *Id*. at ¶ 43. Defendant Spigner owns and controls Defendant VTU and is the managing member and registered agent for VTU, which promises Wyndham owners help in getting out of their timeshares. *Id*. at ¶¶ 25, 65-66. Defendant Simerka owns and controls Defendant LTA, which also sells "timeshare exit services," and is listed as the Chief Executive Member, along with Defendants John Does 1-3, who are also "Executive Members" of LTA but who are not identified by name in the Secretary of State filings for LTA. *Id*. at ¶¶ 24, 28, 65, 68-69.

In essence, Plaintiffs allege that Defendants, who are not parties to the purchase contracts between Plaintiffs and the Wyndham owners, act as third party exit ("TPE") businesses that solicit Wyndham owners and falsely advertise a cancellation or exit service whereby Defendants guarantee Wyndham owners that they will be legally and permanently exited from their purchase contracts if they use Defendants' services and pay Defendants a fee, without disclosing that cancellation of a purchase contract cannot take place without Wyndham's consent, the negative harm to the Wyndham owners as a result of their breach, or Wyndham's free assistance programs that help customers who can no longer afford their timeshare or otherwise wish to leave. *Id*. at ¶¶ 3-6, 56-57, 66, 69, 94-95.

Plaintiffs allege that, after being retained, Defendants improperly instruct or induce Wyndham owners to breach their contracts by stopping payments to Wyndham as a means in facilitating their cancellation of their contracts with Wyndham, despite the fact that such cancellation is unlawful. *Id*. at ¶¶ 8, 13, 77, 88, 104. Defendants allegedly will assign Wyndham owners to pre-selected "referral attorneys," who do little more than send a form demand letter to Plaintiffs around the time that the Wyndham owners are instructed by Defendants or their agents to breach their purchase contracts with Wyndham. *Id*. at ¶¶ 8, 13, 78, 82, 85.

The complaint identifies four "referral attorneys" and their law firms who work with VTU and/or LTA based on consumer reviews posted to these companies' websites, including Aubrey Givens (Aubrey Givens & Associates) and Kristin Fecteau Mosher (who is associated with both Aubrey Givens & Associates and The Law Offices of Kristin Fecteau, PLLC). *Id*. at ¶¶ 78-80. Plaintiffs allege that these four referral attorneys have collectively sent to Wyndham over 1,000 demand letters, which contain identical allegations and demands for every Wyndham owner and that make the same nonspecific allegations of fraud and the Wyndham owner's inability to pay the mortgage. *Id*. at ¶¶ 82-83. The letters allegedly demand that Wyndham agree to terminate any and all timeshare-related contracts; to fully discharge and hold the Wyndham owner harmless from any liability associated with any and all fraudulently-induced timeshare debt, including maintenance fees; to refrain from any derogatory action against the Wyndham owner's credit reports; to cease and desist any and all contact with the Wyndham owner; and a full refund of the Wyndham owner's last purchase/amount paid to Wyndham to date. *Id*. at ¶ 84. Plaintiffs allege that the "these referral attorneys are used by Defendants to create the façade of legitimacy, when in reality Defendants are not able to provide the results they promise" and that the referral attorneys "most often do little more

than send a demand letter." *Id*. at ¶¶ 84, 71. Plaintiffs allege that, as of December 2018, Wyndham

had received at least 397 such demand letters from Givens and Mosher. *Id*. at ¶ 83.

Before the Magistrate Judge is Plaintiffs' motion to disqualify Aubrey Givens and Kristin

Fecteau Mosher (Docket Entry No. 24), who represent Defendants Simerka and LTA ("the Simerka

Defendants"), contending that pursuant to Rule 3.7(a) of the Tennessee Rules of Professional

Conduct, these attorneys should be disqualified because they are necessary witnesses in this action.

Plaintiffs contend that these "'referral attorneys' are integral to the improper business model that

forms the basis of Plaintiffs' claims against Defendants," and that "[t]hese attorneys play a key role

in the administration of Defendants' purported 'cancellation' service." (Docket Entry No. 25, at 3).

In response (Docket Entry No. 29), the Simerka Defendants contend that Plaintiffs' allegations are

without merit and have been lodged for an improper purpose and assert that they should be awarded

their attorney's fees and costs incurred in responding to Plaintiffs' motion.

## II.  LEGAL STANDARD AND ANALYSIS

"Although a district court possesses inherent authority to disqualify an attorney to aid the fair

administration of justice, it is not to use this remedy lightly; that is, courts must remain sensitive to

the parties' choice of counsel and weigh that interest against the public's interest in fair judicial

process." *Barker v. Prof'l Educators of Tennessee*, No. 3:12-CV-0044, 2012 WL 1900920, at *3

(M.D. Tenn. May 23, 2012). "Whether to disqualify an attorney turns on the peculiar factual

situation of the case." *Eon Streams, Inc. v. Clear Channel Commc'ns, Inc.*, No. 3:05-CV-578, 2007

WL 954181, at *3 (E.D. Tenn. Mar. 27, 2007). "A court must view a motion for disqualification

with extreme caution because it can easily be misused as a harassment technique." *Am.'s*

*Collectibles Network, Inc. v. Sterling Commerce (Am.) Inc.*, No. 3:09-CV-143-TRM-HBG, 2017 WL

2598491, at *3 (E.D. Tenn. Feb. 8, 2017). "'Motions to disqualify are viewed with disfavor and disqualification is considered a drastic measure which courts should hesitate to impose except when absolutely necessary.'" *McCool v. Operative Plasterers' & Cement Masons' Int'l Ass'n of U.S. & Canada, AFL-CIO*, No. 13-13614, 2014 WL 635797, at *3 (E.D. Mich. Feb. 18, 2014) (citing *In re Valley-Vulcan Mold Co.*, 237 B.R. 322, 337 (B.A.P. 6th Cir. 1999), *subsequently aff'd*, 5 F. App'x 396 (6th Cir. 2001)). "The decision of whether to disqualify counsel is a matter of discretion." *Hosse v. Sumner Cty. Bd. of Educ.*, No. 3:13-00520, 2015 WL 1505838, at *6 (M.D. Tenn. Apr. 1, 2015) (citing *Grain v. Trinity Health*, 431 F. App'x 434, 447 (6th Cir.2011)). "The moving party 'has the burden of proving that opposing counsel should be disqualified.'" *Melville Capital, LLC v. Tennessee Commerce Bank*, No. 3:11-CV-00888, 2011 WL 6888526, at *1 (M.D. Tenn. Dec. 29, 2011) (citation omitted).

This District has adopted the current Tennessee Rules of Professional Conduct as the standard of professional conduct of the members of the bar of this Court. Local Rule 83.01(c)(4). The standard for establishing disqualification of an attorney on the basis of the attorney likely being a necessary witness is governed be Rule 3.7 of the Tennessee Rules of Professional Conduct. Rule 3.7 provides as follows:

> (a) A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness except where:
>
> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>
> (3) disqualification of the lawyer would work substantial hardship on the client.

Tenn. Sup. Ct. R. 8, RPC 3.7(a). "Although Rule 3.7 states only that a lawyer who may be called

as a witness should not be trial counsel, . . . . [t]his admonishment includes pre-trial activities as well

as trial." *Eon Streams*, 2007 WL 954181, at \*5. (citations omitted). "[T]he Sixth Circuit has long

held that, 'when an attorney knows that he will or ought to be called as a witness, he should

withdraw from representation.'" *Id*. (quoting *Waltzer v. Transidyne Gen. Corp.*, 697 F.2d 130, 134

(6th Cir.1983)).

"'For a lawyer to be a necessary witness, his testimony must be relevant, material, and

unobtainable elsewhere.'" *Tennessee Bank & Tr. v. Lowery*, No. CIV. 3:11-0984, 2012 WL

4849968, at \*1 (M.D. Tenn. Oct. 11, 2012) (quoting *Rothberg v. Cincinnati Ins. Co.*, No. 1:06-cv-

111, 2008 WL 2401190, at \*2 (E.D. Tenn. June 11, 2008)). Thus, "an attorney is a 'necessary

witness' for purposes of Rule 3.7(a) 'only if there are things to which he will be the only one

available to testify.'" *Id*. (citations and internal quotation marks omitted). "Where an attorney has

unique, personal knowledge of [a] corporation's affairs, that attorney is likely to be called as a

witness. Moreover, any person testifying to a contested issue is a necessary witness." *Eon Streams*,

2007 WL 954181, at \*4. "[A]ny doubts about whether a lawyer may be called as a witness should

be resolved in favor of the lawyer being permitted to testify and against the lawyer acting as an

advocate. Accordingly, the preference is to allow the attorney to testify in lieu of maintaining his

position as counsel." *Id*. (citing *Whalley Dev. Corp. v. First Citizens Banchares, Inc.,* 834 S.W.2d

328, 331 (Tenn. Ct. App.1999)).

Here, the complaint alleges that Defendants are TPE businesses that solicit Wyndham owners

and falsely advertise a cancellation service whereby Defendants guarantee Wyndham owners that

they will be legally and permanently exited from their purchase contracts if they use Defendants'

services. Givens and Mosher are necessary witnesses regarding the nature of the alleged association between Defendants and the referral attorneys, including providing information on how Defendants and the referral attorneys obtain Wyndham owners as clients, who actually provides what services to Wyndham owners, and who instructs the Wyndham owners to breach their timeshare contracts. In their complaint, Plaintiffs allege that the names of Wyndham owners represented by Givens correspond to names of certain Wyndham owners who have provided testimonials on LTA's website and that in a recent deposition in a different case a witness testified that Simerka works with Givens. (Docket Entry No. 1, at ¶ 79; Docket Entry No. 33-1). As alleged in the complaint, Defendants advertise on their respective websites that referral attorneys provide services on Defendants' behalf. See *Id*. at ¶ 89(c)(iv) ("'Legal Timeshare Aid can help you find the right timeshare attorney to legally get your timeshare sales company to cancel your fraudulent timeshare contract, and release you from the overwhelming burden of timeshare debt!' (http://legaltimeshareaid.com/debt-relief)").

Further, the complaint alleges that after the Wyndham owners have been referred to one of the referral attorneys, a form demand letter, purportedly from the attorney on behalf of the Wyndham owner and containing identical allegations and demands as every other Wyndham owner, is sent to Wyndham. *Id*. at ¶ 82. These demand letters are allegedly crafted prior to an attorney speaking with the potential Wyndham owner. *Id*. Plaintiffs allege that Wyndham has received at least 397 demand letters from Givens and Mosher and that 99 of 129 Wyndham owners working with Givens and Mosher defaulted within one month of a demand letter being sent to Wyndham. *Id*. at ¶¶ 83, 85. Here, Givens and Mosher are integrally involved in the TPE business practices at issue giving rise to Plaintiffs' claims. Thus, Givens and Mosher are the only witnesses capable of testifying as to the process involved in drafting and sending the demand letters, why hundreds of form demand letters

sent to Wyndham contain identical language, although they are purportedly being sent by different attorneys who are not openly affiliated with each other, and why a large majority of Wyndham owners represented by Defendants default on payments and breach their Wyndham contracts within a month of a form letter being sent on their behalf. *See United States v. Wilson*, No. 5:13-CR-50-JMH, 2013 WL 2243971, at *2 (E.D. Ky. May 21, 2013) (finding that defendant's attorney was a necessary witness and therefore disqualified because his testimony was necessary to establish that he received the check from defendant and that he deposited the check; and because he was the only person who could testify as to why he wrote the checks and explain the notations on the memo lines of the checks).

The Simerka Defendants argue that any questions on these issues could be answered by Simerka instead of by Givens and Mosher. (Docket Entry No. 29, at 12). The Simerka Defendants also argue that "Plaintiffs could depose the other lawyers who are not representing anyone in this case about the letters." *Id*. However, such statements by Simerka may be in conflict with Givens's and Mosher's concerning the issues in question and further Simerka would be represented by these attorneys in discovery and at deposition where Givens and Mosher would need to produce documents and respond to interrogatories on behalf of the Simerka Defendants on requests related to Givens and Mosher, as well as defend testimony of the Simerka Defendants on questions related to Givens and Mosher. Further, other attorneys would not be able to testify as to Givens's and Mosher's relationship with the Simerka Defendants and the nature of the work they performed for LTA and the Wyndham owners as they would lack such knowledge.

As Givens and Mosher are necessary witnesses, the Magistrate must determine if any of the three enumerated exceptions apply that would permit them to act as both an advocate and a witness.

With respect to whether "the testimony relates to an uncontested issue," Plaintiffs' claims and the nature of Defendants' business practices as TPE businesses that gives rise to those claims are clearly contested issues. Givens's and Mosher's testimony will go the heart of the contested issues, as Plaintiffs will ask Givens and Mosher to testify, produce documents, and provide written and deposition discovery about Defendants' timeshare exit practices and the nature of any alleged "services" that they, as referral attorneys, provide to Wyndham owners on behalf of Defendants, including the process of sending demand letters and advising Wyndham owners so as to cause the breach of the contracts at issue in this action.

The Simerka Defendants argue that Plaintiffs cite to "zero admissible or credible proof that Givens and Mosher are improperly working with [LTA]." (Docket Entry No. 29, at 7). However, whether this relationship is "improper" is a key contested issue, along with the other allegations related to the alleged claims, which will require testimony from Givens, Mosher and the other referral attorneys, therefore making them necessary witnesses and requiring their disqualification. Moreover, whether Plaintiffs previously negotiated settlements with attorneys for Wyndham owners (including Givens and Mosher), as the Simerka Defendants assert (Docket Entry No. 29, at 2-3), is irrelevant as to whether Givens and Mosher are necessary witnesses based upon the claims and allegations in this action.

As to the second exception, whether "the testimony relates to the nature and value of legal services rendered in the case," comment 3 to Rule 3.7(a) provides:

> Paragraph (a)(2) recognizes that, where the testimony concerns the extent and value of legal services rendered in the action in which the testimony is offered, permitting the lawyer to testify avoids the need for a second trial with new counsel to resolve that issue. Moreover, in such a situation the judge has firsthand knowledge of the

matter in issue; hence, there is less dependence on the adversary process to test the credibility of the testimony.

Tenn. Sup. Ct. R. 8, RPC 3.7, Cmt. 3.

Here, the testimony sought from Givens and Mosher would not pertain to services rendered in this action. Therefore, this exception is inapplicable. The Simerka Defendants assert that Plaintiffs cannot ask Givens and Mosher any questions because such questions would implicate the attorney client privilege. (Docket Entry No. 29, at 10). "Claims of attorney-client privilege are 'narrowly construed because [the privilege] reduces the amount of information discoverable during the course of a lawsuit.' The privilege 'applies only where necessary to achieve its purpose and protects only those communications necessary to obtain legal advice.'" *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002) (citations omitted). To be sure, certain documents and communications between Givens, Mosher, and Wyndham owners may be subject to a claim of privilege, while others will not. Such issues regarding privilege would need to be addressed on a case-by-case basis. For instance, any documents and communications that do not constitute or involve legal advice or that were shared with or involved a third-party, such as Simerka or LTA, would not be classified as privileged and would therefore be subject to discovery. "As a general rule, the attorney-client privilege is waived by voluntary disclosure of private communications by an individual or corporation to third parties." *Id*. The Simerka Defendants do not explain how the process of attorney referrals and the drafting demand letters used by four law firms could be privileged.

Lastly, as to whether disqualification of the lawyer would work substantial hardship on the client, a court "considers factors such as the cost to hire new counsel, loss of the disqualified

attorney's knowledge of the litigation's history, and the client's preference in counsel" in determining substantial hardship. *Harbin Enterprises Gen. P'ship v. Ingram Micro Inc.*, No. 05-2942 MA/V, 2007 WL 9710345, at *11 (W.D. Tenn. Aug. 15, 2007) (citing *Gen. Mill Supply Co. v. SCA Servs., Inc.*, 697 F.2d 704, 708 (6th Cir. 1982)). Further, the term "hardship" refers to a situation where the alleged victim of the hardship did not knowingly cause and could not have reasonably foreseen such hardship; thus, "if a party is able to ascertain that its counsel may be called as a witness either early in the litigation or at the outset of litigation, then that party cannot later claim substantial hardship if its counsel is disqualified." *Eon Streams,* 2007 WL 954181, at *4 (citation omitted).

Here, the Simerka Defendants should have reasonably foreseen that Givens and Mosher would be called as witnesses given the nature of their business relationship with Defendants and the allegations in this action. Further, litigation has just begun. The Simerka Defendants have not yet filed a response to the complaint and only minimal litigation costs should have been expended at this stage of the proceedings. Although the Simerka Defendants argue that they are entitled to have the counsel of their choice (Docket Entry No. 29, at 9) and the Magistrate Judge is sensitive to this desire, the balance of the factors require disqualification. Moreover, "the Sixth Circuit has long held that, 'when an attorney knows that he will or ought to be called as a witness, he should withdraw from representation.'" *Eon Streams*, 2007 WL 954181, at *5 (quoting *Waltzer*, 697 F.2d at 134); *Gen. Mill Supply Co.*, 697 F.2d at 713 ("A self-inflicted injury is not a hardship.").

### III.  CONCLUSION

Accordingly, for these reasons, Plaintiffs' motion to disqualify Aubrey Givens and Kristin Fecteau Mosher (Docket Entry No. 24) is **GRANTED**.

It is so **ORDERED**.

_____
JEFFERY S. FRENSLEY
United States Magistrate Judge