# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| WYNDHAM VACATION OWNERSHIP, INC., et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 3:18-cv-01399 ) |
| VACATION TRANSFERS UNLIMITED, LLC, et al., | ) ) ) ) |
| Defendants. | ) |

# MEMORANDUM OPINION

For the second time, the Court is presented with Objections (Doc. No. 60) to an Order (Doc. No. 59) entered by Magistrate Judge Frensley, which granted Plaintiffs' Motion to Disqualify Aubrey Givens and Kristin Fecteau Mosher (Doc. No. 24) from representing Defendants Charles Simerka and Mortgage Wellness Solutions, LLC d/b/a Legal Timeshare Aid ("LTA") in this action. The first time around, the Court vacated the Order and remanded the matter for the development of an evidentiary record. Thereafter, Magistrate Judge Frensley directed the parties to file supplemental briefs in support of their respective positions. The record was then supplemented to include a declaration and affidavits. Based upon that record, Magistrate Judge Frensley again granted the Motion to Disqualify. The basis for that ruling was that attorneys Givens and Mosher could be essential witnesses under Rule 3.7(a) of the Tennessee Rules of Professional Conduct regarding key disputed issues that form the basis for Plaintiffs' claims.

Simerka, proceeding *pro se*, has now filed an "Objection of [sic] Magistrate's Second Ruling Disqualifying Counsel and Appeal to Circuit [sic] Court Judge." (Doc. No. 60). That objection will be overruled, and Magistrate Judge Frensley's Order will be affirmed.

# I.

Appeals from a Magistrate Judge's Order are reviewed under Rule 72(a) of the Federal Rules of Civil Procedure, and this includes orders disqualifying counsel because they are nondispositive. O'Hanlon v. AccessU2 Mobile Sols., LLC, No. 18-CV-00185-RBJ-NYW, 2019 WL 1081079, at *4 (D. Colo. Jan. 22, 2019); Franklin v. Regions Bank, No. CV 5:16-1152, 2018 WL 2449208, at *2 (W.D. La. May 31, 2018); Munson Hardisty, LLC v. Legacy Pointe Apartments, LLC, No. 3:15-CV-547-TAV-HBG, 2017 WL 2345571, at *1 (E.D. Tenn. May 30, 2017); Harper v. Everson, No. 3:15-CV-00575-JHM, 2016 WL 9149652, at *2 (W.D. Ky. May 5, 2016). Under the Rule, a nondispositive order may be modified or set aside if it "is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

A finding is "'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948); accord In re Burke, 863 F.3d 521, 528 (6th Cir. 2017). "The question is not whether the finding is the best or only conclusion that can be drawn from the evidence, or whether it is the one which the reviewing court would draw. Rather, the test is whether there is evidence in the record to support the lower court's finding, and whether its construction of that evidence is a reasonable one." Heights Community Congress v. Hilltop Realty, Inc., 774 F.2d 135, 140 (6th Cir.19850; accord Alexander v. Local 496 Intern. Union, 177 F.3d 394, 421 (6th Cir. 1999).

A ruling is contrary to law when it "'contradict[s] or ignore[s] applicable precepts of law, as found in the Constitution, statutes, or case precedent.'" Vanderbilt Univ. v. Scholastic, Inc., 321 F. Supp. 3d 830, 833 (M.D. Tenn. 2018) (quoting David v. Kohler Co., No.

2:15-cv-01263-STA-egb, 2017 WL 3865656, at *4 (W.D. Tenn. Aug. 30, 2017)). Put even more simply, a magistrate judge acts contrary to law if he or she has "misinterpreted or misapplied applicable law." Walter v. Auto-Owners Mut. Ins. Co., No. 3:15-CV-535-TAV-DCP, 2018 WL 4102244, at *1 (E.D. Tenn. Aug. 28, 2018) (citing Hood v. Midwest Sav. Bank, No. C2-97-218, 2001 WL 327723, at *2 (S.D. Ohio. Mar. 22, 2001)).

## II.

In his most recent Order, Magistrate Judge Frensley set forth the governing Tennessee Rules of Professional Responsibility (made applicable to attorneys who practice in the Court pursuant to L.R. 83.01(c)(4)) and the case law that has developed in the area of disqualification when an attorney is likely to be called as a witness. He then applied that law to the facts before him. Based upon his review of the record as supplemented, Magistrate Judge Frensley concluded that "Givens and Mosher would offer testimony that is relevant, material, and unobtainable elsewhere," and "[t]herefore [they] are necessary witnesses and must be disqualified." (Doc. No. 59 at 22).

Simerka argues generally that "the Magistrate ignored much of the evidence submitted," and that "[t]here is no possible way an examination of the evidence submitted should have resulted in a finding of my counsel being 'necessary witnesses.'" (Doc. No. 60 at 1). He then raises several specific objections to Magistrate Judge Frensley's Order, arguing:

- There was no need to disqualify both attorneys because "they both have the exact same knowledge, as they operated in a joint venture doing 'everything as partners' and 'neither knows of any facts or possess any evidence separate or different than the other.'"

- The letters sent by Givens and Mosher "speak for themselves," and other lawyers with whom Simerka has worked "can testify about how referrals were givens [sic], letters sent, etc."

- It was "just plan crazy" for Magistrate Judge Frensley to accept Plaintiffs'

3

argument that "many Wyndham owners will be unavailable as witnesses at trial pursuant to Rule 45, as they live more than 100 miles from where the case will be tried," because depositions can be taken and used at trial.

• Attorneys Givens and Mosher cannot be questioned about drafting and sending demand letters because "[t]his is attorney client privilege."

• It "almost boggles the mind" that Magistrate Judge Frensley concluded Givens and Mosher are capable of providing relevant and material testimony regarding the process involved in drafting and sending the demand letters, why hundreds of form demand letters sent to Wyndham contain identical language, although they are purportedly being sent by different attorneys who are not openly affiliated with each other, and why, if true, a large majority of Wyndham owners represented by Defendants default on payments and breach their Wyndham contract within a month of a form letter being sent on their behalf."

(Id. at 2-6).

Ignoring the unnecessary hyperbole, Simerka's arguments, when taken separately, might give some pause for thought. However, Magistrate Judge Frensley looked at the broader picture, which amply illustrates that both Mosher and Givens are "likely to be a necessary witness" within the meaning of Rule 3.7(a). For one, the allegations of the Complaint suggest a need for their testimony. Though not named as defendants, specific allegations are made against them, including, among other things, that (1) Vacation Transfers Unlimited ("VTU") and LTA "matched up" clients to them (Doc. No. 1, Complaint ¶ 78); (2) Simerka "works with Givens" (id. ¶ 79); (3) Mosher is associated and partners with Givens on timeshare related litigation (id. ¶¶ 78, 79); (4) demand letters making assertions of fraud from VTU's and LTA's clients contain virtually identical language (id. ¶ 80); (5) demand letters are crafted without the lawyer even speaking with the customer/client (id. ¶ 82); (6) Wyndham has received at least 397 demand letters from Givens and Mosher (id. ¶ 83); and (7) referral attorneys like Givens and Mosher "are used by Defendants to create the façade of legitimacy, when in reality Defendants are not able to provide the results they promise" (id. ¶ 85).

4

To be sure, allegations in a complaint are just that – allegations. Furthermore, particular care must be taken in the context of motions to disqualify because "'the ability to deny one's opponent the services of capable counsel[ ] is a potent weapon,' Manning v. Waring, Cox, James, Sklar & Allen, 849 F.2d 222, 224 (6th Cir. 1988), that can be 'misused as a technique of harassment.' Kitchen v. Aristech Chem., 769 F. Supp. 254, 257 (S.D. Ohio 1991)." Moses v. Sterling Commerce (Am.), Inc., 122 F. App'x 177, 183 (6th Cir. 2005). Here, however, the allegations in the Complaint are not made out of whole cloth.

Attached to the Declaration of John B. Crace and the Affidavit of Ramona Harrington (Doc. No. 55) are a number of exhibits that lend support to Wyndham's claims. Specifically as it relates to Givens and Mosher, these include (1) a copy of a demand letter from Givens to Wyndham on behalf of a timeshare owner that is remarkably similar to demand letters Wyndham received from other referral attorneys (Doc. No. 55-1); (2) a VTU advertisement expressing confidence in its "referral law firms" and claiming a "100% success rate for families if you qualify" (Doc. No. 54-11); (3) advertisements from LTA touting its referral lawyers (Doc. No. 54-1); and (4) a blogpost on LTA's website listing and discussing seven lawsuits that had been filed against Wyndham by Givens and Mosher (Doc. No. 54-5). Moreover, while Simerka's carefully-worded response to the Motion to Disqualify states that there is "zero admissible or credible proof that Givens and Mosher are improperly working with Mortgage Wellness Solutions/Legal Timeshare Aid" (Doc. No. 29 at 7), nowhere does he deny that Givens and Mosher are referral attorneys as alleged in the Complaint. And, any contention that there is no relationship between Simerka and those attorneys is belied by their appearance as counsel for him in this action.

Simerka's suggestion that the umbrella of attorney client-privilege protects Givens and

Mosher from being witnesses is wrong. "Blanket assertions of protection under either the attorney-client privilege or work product protection are ineffective to preserve these protections." Pravak v. Meyer Eye Grp., PLC, No. 2:07-2433-MLV, 2009 WL 10664851, at *5 (W.D. Tenn. Oct. 22, 2009); see also In re LeFande, 919 F.3d 554, 563 (D.C. Cir. 2019) (noting that a "blanket assertion of the privilege does not suffice"). This is because "[s]uch assertions disable the court and the adversary party from testing the merits of the claim of privilege." United States v. El Paso Co., 682 F.2d 530, 541 (5th Cir. 1982); see also In re Grand Jury Proceedings, John Doe, 754 F.2d 154, 155 (6th Cir. 1985) (stating the "the propriety of nondisclosure could be determined only on the basis of particularized determinations"); United States v. Martin, 278 F.3d 988, 1000 (9th Cir. 2002) ("Blanket assertions are 'extremely disfavored'" and "[a] party claiming the privilege must identify specific communications and the grounds supporting the privilege as to each piece of evidence over which privilege is asserted."). For example, documents and communications that do not suggest the giving or receiving of legal advice or those that are shared with third-parties may not be privileged.

Finally, the Court is unpersuaded that Givens and Mosher are not necessary witnesses because the Defendants and their clients can testify about the events underlying the allegations in the Complaint. Witnesses cannot always be replicated, and Givens and Mosher are the best (if not the only) witnesses who can competently testify about specific things that they themselves did or did not do. See Armada (Singapore) Pte Ltd v. Amcol Int'l Corp., 160 F. Supp. 3d 1069, 1071 (N.D. Ill. 2016) ("Witnesses are not fungible, and thus the quality of the evidence each may provide can only be determined in retrospect."); Glanzman v. Dominicana De Aviacion, No. 89 CIV. 6360 (SWK), 1990 WL 160881, at *1 (S.D.N.Y. Oct. 19, 1990) ("At bottom, attorneys are fungible but witnesses are not."). Further, even though Rule 3.7 "allows an attorney to function as both attorney

and witness, assuming he is not a necessary witness[,] [w]here an attorney has unique, personal knowledge of the corporation's affairs, that attorney is to be called as a witness," and "any person testifying to a contested issue is a necessary witness." Eon Streams, Inc. v. Clear Channel Commc'ns, Inc., No. 3:05-CV-578, 2007 WL 954181, at *4 (E.D. Tenn. Mar. 27, 2007) (citations omitted).

Moreover, should this case proceed to trial, there is a distinct possibility that Givens' and Mosher's representation could present an "unsworn witness problem." This problem "arises when an attorney was a participant in events to be explored at trial . . . [i]n that circumstance the attorney might convey 'first-hand knowledge of the events without having to swear an oath or be subject to cross examination.'" United States v. Evanson, 584 F.3d 904, 909 (10th Cir. 2009) (citation omitted). Although this usually presents no problem for the client, he or she may gain "an unfair advantage," and the factfinding process can be compromised. Id.; see also United States v. White, 545 F. App'x 69, 71 (2d Cir. 2013) (citation omitted); Adeniyi-Jones v. State Farm Mut. Auto. Ins. Co., No. CV 14-7101, 2016 WL 3551486, at *2 (E.D. Pa. June 30, 2016) ("An attorney who acts as an unsworn witness should be disqualified as counsel, in part to prevent the attorney from 'subtly impart[ing] to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross examination.'"). Indeed, "this scenario strikes at Rule 3.7's core concern, blurring the line between an attorney's role as advocate and as a witness with personal knowledge, impairing the fact-finding process." Wise v. Washington Cty., No. CIV.A. 10-1677, 2013 WL 5674460, at *5 (W.D. Pa. Oct. 17, 2013) (citing Evanson, 584 F.3d at 909).

### III.

Ultimately, five factors underlie this Court's affirmance of Magistrate Judge Frensley's

Order. First, given the standard of review under Rule 72(a), whether this Court would have decided differently in the first instance is irrelevant. Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985); see also, Dickerson v. Johnson, No. 3:14-CV-1717, 2016 WL 1028117, at *3 (M.D. Tenn. Mar. 15, 2016) (applying Anderson in the context of review under Rule 72(a)); United States v. Bd. of Educ. of City of Union City, No. CIV. A. 83-2651, 1988 WL 188297, at *1 (D.N.J. Aug. 15, 1988) (same); Jones v. Caruso, No. 1:07-cv-392, 2009 WL 2488052, *1 (W.D. Mich. Aug. 12, 2009) (stating that Rule 72(a) "does not empower a reviewing court to reverse the Magistrate Judge's finding because it would have decided the matter different"). Second, and with limited exceptions not relevant here, "a lawyer shall not act as an advocate in which the lawyer is to be a necessary witness." Tenn. Sup., Ct. R. 8, RPC 3.7(a). Third, motions to disqualify "requir[e] the court to 'exercise judgment with an eye toward upholding the highest ethical standards of the profession, protecting the interest of the litigants in being represented by the attorney of their choosing, . . . and the overriding societal interests in the integrity of the judicial process.'" Tennessee Bank & Tr. v. Lowery, No. CIV. 3:11-0984, 2012 WL 4849968, at *1 (M.D. Tenn. Oct. 11, 2012) (quoting Cavender v. U.S. Express Enters., Inc., 191 F. Supp.2d 962, 965 (E.D. Tenn. 2002)). Fourth, "'[w]hen faced with th[e] issue [of attorney disqualification] the trial judge and the attorney should resolve any doubts 'in favor of the lawyer testifying and against his becoming or continuing as an advocate.'" Howard v. Bd. of Educ. of Memphis City Sch., 70 F. App'x 272, 278 (6th Cir. 2003) (quoting Whalley Dev. Corp. v. First Citizens Bancshares, Inc., 834 S.W.2d 328, 331 (Tenn. Ct. App. 1992)). Fifth, there is nothing before the Court to suggest that the Motion to Disqualify was filed to harass, or for any other untoward purpose.

Accordingly, Simerka's "Objection of [sic] Magistrate's Second Ruling Disqualifying

8

Counsel and Appeal to Circuit [sic] Court Judge" (Doc. No. 60) will be overruled, and Magistrate Judge Frensley's Order (Doc. No. 59) disqualifying counsel will be affirmed.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES JUDGE